UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JENNIFER FOWLER,

           Plaintiff,

v.                                      Civil Action No. 2:14-5510

KANAWHA VALLEY FINE JEWELRY
AND LOAN LLC,

           Defendant.

MEMORANDUM OPINION & ORDER

           Pending is the defendant's motion for partial summary
judgment, filed October 20, 2014.


I. Factual and Procedural Background


           The plaintiff, Jennifer Fowler, relies entirely on a
motorized wheelchair for mobility.  Fowler Dep. 8:14-20, Sept.
25, 2014.  On August 30, 2013, she visited the premises of the
defendant, Kanawha Valley Fine Jewelry and Loan LLC ("KVFJL"),
Compl. ¶ 8; Ans. at 1, at its store located at the eastern city
limits of Charleston, West Virginia.  Parking in front of the
store is provided in a row of lined slots, each of which runs to
a sidewalk on which the building and its entrance fronts.  The
curb of the sidewalk presented an obstacle over which Fowler
could not maneuver her wheelchair.  Fowler Dep. 35:3-11.

Observing no ramp that would have allowed her to gain access to the store, she asked store employees how she might do so.  Fowler Dep. 35:3-11.  In response, two male employees who are not identified by name in the record retrieved a piece of plywood and positioned it so that it formed a makeshift ramp bridging the curb of the sidewalk between the storefront and the parking area.  See Fowler Dep. 35:6-36:1.

Fowler ascended the plywood ramp, entered the store, transacted her business, then left.  Fowler Dep. 36:4-37:17.  A store employee held the door for her as she exited and noted that the plywood ramp was still in place.  Fowler Dep. 37:23-38:4.  Fowler proceeded slowly, but the wheels of her chair pushed the plywood off of the curb, and the ramp collapsed.  Fowler Dep. 38:6-19.  Unable to stop, she teetered on the edge of the curb, and then pitched forward out of her chair onto the pavement.  Fowler Dep. 39:7-17, 40:9-22.

Fowler struck her head and suffered abrasions to her hands and knees in the fall.  Fowler Dep. 41:15-20, 42:1-4.  Her wheelchair was "still moving" but "[t]he control arm broke off of it."  Fowler Dep. 44:8-11.  Several of the defendant's employees came to check on her, asking if she was alright, and Fowler replied that she was not.  Fowler Dep. 42:22-43:5.  Instead, she believed she needed to go to the hospital because

2

she was "having a lot of pain, and [her] back . . . neck, shoulders, [and] upper arms" were "starting to go numb." Fowler Dep. 46:3-9.

The defendant's employees offered to call an ambulance for the plaintiff, but she "had [her] power chair, and there was no way to accommodate it in an ambulance, so [Fowler] called C&H Taxi," which has "a handicap van." Fowler Dep. 43:21-44:2. The defendant's employees paid the fare for the taxi to take Fowler to Thomas Memorial Hospital. Fowler Dep. 44:21-23, 46:20-47:1. Fowler underwent X-Rays at the hospital, which revealed no fractures; she was diagnosed with several sprains, given Lortab for her pain, and sent home. Fowler Dep. 47:2-21. She was not admitted. Id.

Fowler has not returned to KVFJL since the accident, although she claims she would like to do so. Compl. ¶ 31. She has, however, gone by the premises and observed that an asphalt ramp was constructed near the front door to the store. Fowler Dep. 56:10-17. She has not tried to use the ramp, but has, on several occasions, observed vehicles parked on the ramp. Fowler Dep. 57:7-10.

The plaintiff initiated this action on January 29, 2014, charging the defendant with negligence (Count I) and with violating the Americans with Disabilities Act ("ADA" or "the

3

Act"), 42 U.S.C. §§ 12101-12213 (2012), by failing to remove an architectural barrier, thereby denying her full and equal access to the store (Count II and Count III). See generally Compl. She seeks a declaration that the store is not accessible, an order directing the defendant to make the store accessible, and compensatory and punitive damages. Compl. at Prayer for Relief.

A few months before the filing of the complaint, on October 7, 2013, Fowler's attorney wrote to the defendant, asking, among other things, that the makeshift plywood ramp be preserved for inspection. Plaintiff's Response to Defendant's Motion for Partial Summary Judgment ("Pl.'s Resp."), Ex. 5 ("Also, I ask that you preserve the wooden ramp in its current condition. Please be advised that your failure to do so would constitute spoliation of evidence."). On July 22, 2014, the plaintiff's expert, engineer John Sadowski, visited KVFJL to inspect the wooden ramp and the newly constructed asphalt ramp. According to his report, "Mr. Tavis Haley, Attorney with Pullin, Fowler, Flanagan, Brown & Poe PLLC was at the building and stated the wooden ramp was unavailable to view, [because] the ramp had been discarded." Pl.'s Resp., Ex. 6.

Mr. Sadowski was, however, able to examine photographs and a video of the wooden ramp, as well as physically inspect the asphalt ramp. He opined that both the wooden ramp and the

4

asphalt ramp failed to comply with various ADA accessibility standards.  In particular, Mr. Sadowski's report states that the wooden ramp was neither firm nor stable, was not flush with surrounding surfaces, and was not protected by a curb sufficient to prevent a person from slipping off the ramp's surface.  <u>Id.</u> Regarding the asphalt ramp, Mr. Sadowski observed that it, too, was not flush with surrounding surfaces, lacked a slip-resistant surface and detectable warning features, was improperly sited such that it projected into traffic and could be obstructed by parked vehicles, did not have "flared sides", and was not located adjacent to an accessible parking space or passenger loading zone with appropriate signage.  <u>Id.</u>  He concluded that both ramps were "noncompliant with ADA standards."  <u>Id.</u>

On October 20, 2014, the defendant moved for partial summary judgment on two issues.  First, KVFJL asserts that it is entitled to judgment as a matter of law on the plaintiff's ADA claims; second, the defendant seeks summary judgment on Fowler's request for punitive damages.  The merits of the negligence claim are not presented.

The court has federal-question jurisdiction over the ADA claims, 28 U.S.C. § 1331, and supplemental jurisdiction over the negligence claim, 28 U.S.C. § 1367, inasmuch as it arises out of the same common nucleus of facts as the ADA claims.

## II. Standard of Review

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those necessary to establish the elements of a party's cause of action.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable factfinder could return a verdict for the non-movant.  <u>Id.</u>  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  <u>Id.</u> at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the nonmovant. <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the

6

evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

A court must not resolve disputed facts, weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), or make determinations of credibility, Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

III. Discussion


A. ADA Claims


The ADA was first enacted in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1).  Title III of the Act specifically prohibits discrimination against individuals "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation[.]"  42 U.S.C. § 12182(a).

In order to ameliorate the discriminatory effect that the physical environment in particular may have on people with disabilities (including those, like Fowler, with mobility impairments), Title III imposes a variety of design requirements on covered facilities, depending on when the facilities were first constructed or altered.  Facilities built after January 26, 1993 must be "readily accessible to and usable by individuals with disabilities," 42 U.S.C. § 12183(a)(2), meaning that the built environment must comply with the ADA Accessibility Guidelines ("ADAAG"), "an encyclopedia of design standards" promulgated by the Department of Justice.  See Oliver v. Ralphs Grocery Co., 654 F.3d 903, 905 (9th Cir. 2011).

8

Similarly, if a facility built before that date is thereafter altered in certain specified ways, the altered portion must also comply with the ADAAG.  42 U.S.C. § 12183(a)(2).

Most importantly for purposes of this case, in facilities built before January 26, 1993 (which seems to be the case here), that have not been altered within the meaning of § 12183(a)(2), "architectural barriers" must, nevertheless, still be removed where it is "readily achievable" to do so.  42 U.S.C. § 12182(b)(2)(A)(iv).  "[W]hat constitutes an architectural barrier, as well as the specifications that covered entities must follow in making architectural changes to remove the  barrier" are determined by reference to the ADAAG standards.  See 28 C.F.R. § Pt. 36, App. A (citing 28 C.F.R. 36.304(d)); see also Ralphs Grocery Co., 654 F.3d at 905 ("If a particular architectural feature of a place of public accommodation is inconsistent with the ADAAG, a plaintiff can bring a civil action claiming that the feature constitutes a barrier that denies the plaintiff full and equal enjoyment of the premises in violation of the ADA.").

In this case, Fowler's ADA claims -- Count II and Count III -- reduce to one essential allegation:  that KVFJL is depriving her of the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations

of any place of public accommodation" because of her disability in violation of 42 U.S.C. § 12182(a), (Count II), by failing "to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable," id. § 12182(b)(2)(A)(iv), (Count III).  Specifically, she claims that it was readily achievable for the defendant to "ma[k]e a curb cut in the sidewalk around the building at the entrance or otherwise install[] a safe ramp that complied with the ADA" in order to provide wheelchair access to the store.  Compl. ¶¶ 31, 34-35.  She seeks an order directing KVFJL to "remove architectural barriers" in order to make the store "readily accessible."  Compl. at Prayer for Relief.

KVFJL argues that it is entitled to summary judgment on Fowler's ADA claims because the wooden ramp provided, and the asphalt ramp now provides, adequate accessibility.  Failing that, the defendant maintains that Fowler has no right to recover compensatory damages for any alleged ADA violation. These challenges to the plaintiff's claims are most straightforwardly analyzed in reverse order.

With respect to damages, § 12188 of the Act states that the "remedies and procedures set forth in [§] 2000a-3(a) of [title 42] are the remedies and procedures" available to "any person who is being subjected to discrimination on the basis of

10

disability[.]" 42 U.S.C. § 12188.  Section 2000a-3(a), in turn,
provides that an aggrieved person may bring "a civil action for
preventive relief, including an application for a permanent or
temporary injunction, restraining order, or other order." 42
U.S.C. § 2000a-3(a).  The plain text of that provision, courts
routinely hold, authorizes only prospective relief to enjoin
ongoing violations; money damages for past harms cannot be
recovered.  See, e.g., Goodwin v. C.N.J., Inc., 436 F.3d 44, 50
(1st Cir. 2006); Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d
79, 86 (2d Cir. 2004); Bowers v. NCAA, 346 F.3d 402, 433 (3d
Cir. 2003).  The plaintiff does not dispute this point.

       Given the forward-looking nature of the injunctive
relief available to individual plaintiffs under the Act, it
follows that an ADA claim may become moot if the defendant cures
the alleged accessibility violation after the complaint is
filed.  See, e.g., Ralphs Grocery Co., 654 F.3d at 905 ("Because
a private plaintiff can sue only for injunctive relief (i.e.,
for removal of the barrier) under the ADA, a defendant's
voluntary removal of alleged barriers prior to trial can have
the effect of mooting a plaintiff's ADA claim."); Hernandez v.
Polanco Enterprises, Inc., 19 F. Supp. 3d 918, 936 (N.D. Cal.
2013) (same).  The defendant argues that is precisely what
happened in this case following the installation of its asphalt

11

ramp.  See Defendant's Memorandum of Law in Support of its
Motion for Summary Judgment ("Def.'s Mem.") at 5 ([P]laintiff's
claims for injunctive relief . . . have been rendered moot by
construction of an asphalt ramp at the subject store.").  Fowler
denies that her claims are moot, arguing that "the asphalt ramp
. . . is not even compliant with the ADA."  Pl.'s Resp. at 6.

That leaves just two relevant questions remaining: (1)
Are the ADA claims moot because the asphalt ramp removed the
barrier to access at the defendant's store?; and, if not, (2) Is
the defendant nevertheless entitled to summary judgment because
removal of the barrier is not "readily achievable"?

As to the first question, neither party disputes that
a change in level such as a step, or in this case, a curb is an
architectural barrier to access for a person like Fowler who
uses a wheelchair.  See Speciner v. NationsBank, N.A., 215 F.
Supp. 2d 622, 632 (D. Md. 2002) (analyzing whether the removal
of a barrier created by two steps was "readily achievable");
Simpson v. City of Charleston, 22 F. Supp. 2d 550, 552, 555
(S.D. W. Va. 1998) (discussing the duty to remove architectural
barriers in a case involving a wheelchair curb ramp with a 1.5-
2" vertical rise between the street and the base of the ramp).
Given Mr. Sadowski's findings that the asphalt ramp is in
several respects not in compliance with ADA standards, and the

12

defendant's failure to present any evidence concerning the accessibility of the asphalt ramp, the court concludes that Fowler's claim is not moot and that, based on the evidence adduced thus far, a barrier to access may remain at the defendant's store.

Regarding the second question, "[e]xamples of steps to remove barriers include" installing ramps and making curb cuts in sidewalks and at entrances, 28 C.F.R. § 36.304(b)(1), (2), and those steps are "readily achievable" if they are "easily accomplishable and able to be carried out without much difficulty or expense," 42 U.S.C. § 12181(9); see also Compl. ¶¶ 35-36 (asserting that both options are readily achievable and can be "carried out without much difficulty or expense.").

There is some disagreement concerning which party bears the initial burden of producing evidence that the removal of an architectural barrier is, or is not, readily achievable. See Berthiaume v. Doremus, 998 F. Supp. 2d 465, 474-75 (W.D. Va. 2014) (collecting authority); compare Molski v. Foley Estates Vineyard & Winery, LLC, 531 F.3d 1043, 1048 (9th Cir. 2008) ("By placing the burden of production on the defendant, we place the burden on the party with the best access to information[.]"), with Colorado Cross Disability Coalition v. Hermanson Family Ltd. Partnership, 264 F.3d 999, 1002-03 (10th Cir. 2001)

13

("Accordingly, we conclude [p]laintiff must initially present
evidence tending to show that the suggested method of barrier
removal is readily achievable under the particular
circumstances.  If [p]laintiff does so, [d]efendant then bears
the ultimate burden of persuasion that barrier removal is not
readily achievable under subsection (iv).").  Most courts place
the initial burden of production on the plaintiff, at least to
some degree.  See, e.g., Roberts v. Royal Atl. Corp., 542 F.3d
363, 373 (2d Cir. 2008) (articulating a "middle road" approach
that requires the plaintiff to "articulate a plausible proposal
for barrier removal, the costs of which, facially, do not
clearly exceed its benefits," but declining to require the
plaintiff to submit proposals that are "exact or detailed").

        But it's not necessary to decide that issue in this
case, because it appears essentially uncontested based on the
evidence in the record that installing a ramp at the defendant's
property was "readily achievable."  Indeed, the defendant admits
that it has already constructed "an asphalt ramp at the subject
store," and both parties have submitted photographs of that
ramp.  See Defendant's Motion for Summary Judgment, Ex. D; Pl.'s
Resp., Ex. 6.  Thus, even assuming that Fowler bears the burden
of production, the evidence of the ramp's existence introduced
by both sides tends to show "that the suggested method of

                              14

barrier removal is readily achievable under the particular circumstances." Colorado Cross, 264 F.3d at 1002-03.  KVFJL offers no argument to the contrary.  At the very least, the defendant has failed to show "that there is an absence of evidence to support the nonmoving party's case," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), and, as a result, is not entitled to summary judgment.

In sum, the evidence at this stage indicates that an architectural barrier exists at the defendant's store that appears to be readily removable by means of installing a compliant ramp; the plaintiff has offered evidence that the asphalt ramp presently installed is not compliant; the defendant has offered no evidence regarding the asphalt ramp's efficacy and makes no argument that building a compliant ramp is not readily achievable.  Consequently, the defendant's motion for summary judgment on the merits of Count II and Count III is denied.  On the other hand, the defendant is correct (and, as noted, the plaintiff does not dispute) that injunctive relief is the only remedy available to Fowler under Count II and Count III.  As a result, the defendant's motion for summary judgment is granted to the extent it seeks judgment that compensatory damages are not available to Fowler for her ADA claims.

### B. Punitive Damages

Under West Virginia law, punitive damages are not appropriate in cases of "simple negligence," <u>Bennett v. 3 C Coal Co.</u>, 379 S.E.2d 388, 394 (W. Va. 1989), but are instead reserved for "actions of tort [] where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear," <u>Alkire v. First Nat'l Bank of Parsons</u>, 475 S.E.2d 122, 129 (W. Va. 1996). An award of punitive damages is reserved for "extreme and egregious bad conduct" -- it "is the exception, not the rule," and "the level of bad conduct on the part of the defendant must be very high in order to meet the punitive standard." <u>Perrine v. E.I. du Pont de Nemours & Co.</u>, 694 S.E.2d 815, 909-10 (W. Va. 2010).

KVFJL maintains that, because there is no evidence that it "acted in a manner that would support an award of punitive damages," Fowler should not be permitted to proceed with her claim for punitive damages on her negligence theory. Fowler responds that she "will present evidence that" KVFJL "failed to maintain its premises in a safe manner, failed to provide reasonable access to its store, and . . . blatantly failed to comply with" the ADA. Pl.'s Resp. at 7. She also argues that she "will present evidence that the makeshift,

16

plywood ramp that was provided was completely ineffectual, dangerous, and caused her significant injuries." <u>Id.</u>

The evidence the plaintiff has submitted thus far is that the plywood ramp "was in a deteriorated condition," "not stable or firm," and "not attached to the curb," Pl.'s Resp., Ex. 6, but the defendant's employees nevertheless permitted her to use it, Fowler Dep. 36:4-40:22.  Those facts do not reflect the degree of extreme, egregious, wanton, willful, or reckless conduct that warrants the imposition of punitive damages.  There is no indication, for example, that the defendant's employees ignored warnings that the plywood ramp was likely to fail in the manner that it did, nor is there any evidence that they were aware of any previous accident involving use of a similar ramp at their premises but failed to take corrective action.  <u>Cf.</u> <u>Workman v. United Artists Theatre Circuit, Inc.</u>, 84 F. Supp. 2d 790, 793-94 (S.D. W. Va. 2000) ("Here, plaintiffs have brought forward some evidence of [defendants'] failure to correct a known hazardous condition where large numbers of the public, including [p]laintiffs are business invitees.  This showing is sufficient to preclude summary judgment.").

Even the plaintiff's complaint characterizes KVFJL's conduct with respect to the plywood ramp as no more than "negligent[] and careless[]."  Compl. ¶¶ 18, 24-26.  To the

17

extent she accuses the defendant of the requisite degree of bad behavior, she appears to do so in connection with her ADA claims rather than her negligence claim.  See Compl. at Prayer for Relief (requesting "punitive damages . . . for the willful, wanton, and/or reckless disregard for her legal rights[.]").  Fowler echoes that theory in her opposition to the motion for summary judgment, arguing that punitive damages are appropriate because KVFJL's "violation of the ADA constitutes per se negligence and demonstrates its reckless indifference to its disabled patrons' safety and equal access."  Pl.'s Resp. at 7. She adds that "discrimination is, by its nature, malicious, oppressive, willful, and constitutes reckless indifference," and cites case-law upholding the availability of punitive damages for claims of employment discrimination under the West Virginia Human Rights Act.  Id.

Fowler is correct that the state Human Rights Act authorizes punitive damages in some statutory discrimination cases.  See Haynes v. Rhone-Poulenc, Inc., 521 S.E.2d 331, 345-48 (W. Va. 1999).  But, as noted, individual plaintiffs cannot recover any form of money damages -- compensatory or punitive -- for claims under Title III of the ADA.  Even in cases brought by the Attorney General (in which the General may request money damages for aggrieved individuals), the Act specifically

18

provides that punitive damages are not available.  See 42 U.S.C. § 12188(b)(2)(B) and (b)(4) ("[T]he term 'money damages' . . . does not include punitive damages.").  Given that Congress did not statutorily authorize punitive damages as a tool for encouraging compliance with Title III, there is no reason to think that a violation of Title III's requirements, if established, should automatically warrant punitive damages under a negligence theory.

Accordingly, KVFJL's motion for summary judgment on the issue of punitive damages is granted.

IV. Conclusion

For the foregoing reasons, it is ORDERED that the defendant's motion for summary judgment be, and it hereby is, granted insofar as it seeks judgment that the plaintiff may not recover compensatory damages under the ADA or punitive damages for her negligence claim, and is otherwise denied.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

DATED: January 13, 2015

John T. Copenhaver, Jr.
United States District Judge

19